UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

ANGELINA PETTAWAY,

                    Plaintiff,

     -against-

CAROLYN W. COLVIN, Commissioner of Social
Security,

                  Defendant.

---------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-2914 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Angelina Pettaway brings this action, pursuant to 42 U.S.C. §§ 405(g) and

1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that

she is not disabled and therefore not entitled to supplemental security income ("SSI"). Plaintiff

argues that the SSA made a number of errors in denying her application for benefits: that it (1)

failed to develop the record regarding Plaintiff's psychiatric condition and level of social

functioning; (2) failed to develop the record regarding Plaintiff's physical impairments; (3) failed

to properly evaluate the Fordham-Tremont treatment notes; (4) failed to properly evaluate the

opinions of physicians Dr. David Mahony and Dr. Azra Mansoor; (5) failed to make a proper

assessment of Plaintiff's Residual Functional Capacity; (6) failed to properly evaluate the

vocational expert's testimony; and (7) failed to consider whether Plaintiff was entitled to a closed

period of benefits. The Commissioner of Social Security has filed a motion, and Plaintiff has

filed a cross-motion, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c). For the reasons set forth below, the Commissioner's motion is DENIED, Plaintiff's

motion is GRANTED, and this case is REMANDED to the SSA for further proceedings.

# I.  BACKGROUND

Plaintiff was born on June 14, 1963. (Administrative R. ("Rec.") (Dkt. 8) at 58, 70.) She has previously worked as a maintenance worker, a home attendant, a hotel housekeeping staff member, and a stock clerk. (Id. at 24, 70, 142, 177.)

On March 26, 2010, Plaintiff filed a pro se application for SSI benefits, claiming that she had been disabled since August 1, 2009, due to bipolar disorder, depression, asthma, heart disease, status post exploratory laparotomy, high blood pressure, and thyroid problems. (Id. at 58, 79, 140, 160-67.) Plaintiff alleged that she felt depressed and did not feel like being around others, and that she had difficulty dealing with figures of authority. (Id. at 165-67.) In light of these impairments, Plaintiff claimed that she was wholly disabled within meaning of the Social Security Act, § 1614(a)(3)(A), and that she was unable to perform any jobs that existed in significant numbers in the national economy. (Id.) The SSA denied her application on July 28, 2011. (Id. at 58.)

Plaintiff requested a hearing on her application before an Administrative Law Judge ("ALJ"); ALJ Lori Romeo held a hearing on the application on January 31, 2011. (Id. at 7-57.) Plaintiff and a vocational expert, Andrew Pasternak, testified at the hearing. (Id.) Plaintiff testified that she had frequent mood swings, that she was unable to concentrate or sit for too long, and that her depression medication made her drowsy and sluggish in the mornings. (Id. at 23-27.) She also stated that because of her asthma, she experienced shortness of breath when walking. (Id. at 26.) On July 28, 2011, the ALJ issued a written decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act.[1] (Id. at 62-71.) Plaintiff requested that the SSA Appeals Council review the ALJ's unfavorable decision. (Id. at

---

[1]    The details of the evidence presented to the ALJ and the ALJ's decision will be discussed in Part III.

6.) The Appeals Council denied Plaintiff's request for review on May 24, 2012 (id. at 1-3), rendering the ALJ's decision the final decision of the Commissioner. See 42 U.S.C. § 405(g).

On June 8, 2012, Plaintiff, now represented by counsel, filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of the SSA's decision that she was not disabled and therefore not entitled to SSI. (Compl. (Dkt. 1).) On February 3 and 4, 2014 respectively, Plaintiff and the Commissioner filed cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Pl. Mem. (Dkt. 27); Def. Mem. (Dkt. 29).)

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents

possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

## B.  Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

## C.  Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The

impairment must be of "such severity that the [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). The Second Circuit has described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995) (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of

proof at step five that requires the Commissioner "to show there is other gainful work in the national economy that the claimant could perform." Id.

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id. That duty is "heightened" when the claimant appears at the hearing pro se. Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 83 (2d Cir. 2009).

## III. DISCUSSION

Plaintiff argues that the ALJ erred in concluding that she was not disabled under the Social Security Act. (Compl.) She does not dispute the first two steps of the ALJ's five-step analysis: (1) that Plaintiff had "not engaged in substantial gainful activity since March 26, 2010"; and (2) that Plaintiff suffered from a combination of severe impairments, namely status post exploratory laparotomy, asthma, tricuspid valve disease, and major depressive disorder. (Rec. at 64.)

At step three, the ALJ considered how seriously Plaintiff was impaired and found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in the Listing of Impairments. (Id.) At step four, the ALJ found that Plaintiff had "the residual functional capacity to perform light work" except that she

could "only understand, remember, and carry out simple instructions" and could "only perform simple tasks independently." (Id. at 66.) The ALJ additionally noted that Plaintiff "must avoid concentrated exposure to cold, heat, wetness, fumes, odors, gases, and poor ventilation." (Id.) Based on that residual functional capacity, the ALJ found at step four that Plaintiff was "unable to perform any past relevant work" but, at step five, that there were "jobs that exist[ed] in significant numbers in the national economy that the claimant [could] perform," such as hospital products assembler, electrical products assembler, and electrical accessories assembler. (Id. at 69-70.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Id. at 71.)

Plaintiff argues that the ALJ committed a number of errors in the determination of Plaintiff's residual functional capacity, upon which the ALJ premised her unfavorable conclusions at steps three, four, and five. She asserts that the ALJ: (1) failed to develop the record regarding Plaintiff's psychiatric condition and level of social functioning (Pl. Mem. at 7, 9-10, 17, 20, 24-25); (2) failed to develop the record regarding Plaintiff's physical impairments (id. at 9-12); (3) failed to properly evaluate the treatment notes from Fordham-Treatment Community Mental Health Center (id. at 12-13, 16-17); (4) failed to properly evaluate the opinions of physicians David Mahony, M.D. and Azra Mansoor, M.D. (id. at 17-20); (5) failed to make a proper assessment of Plaintiff's Residual Functional Capacity (id. at 7, 23-24); (6) failed to properly evaluate the vocational expert's testimony (id. at 4-7, 21-23); and (7) failed to consider whether Plaintiff was entitled to a closed period of benefits (id. at 13-15).

7

**A.    Development of Record Regarding Psychiatric Condition and Social Functioning**

Plaintiff argues that the ALJ did not adequately develop the record regarding her psychiatric condition and level of social functioning. (Id. at 7, 9-10, 17, 20, 24-25.) Specifically, Plaintiff contends that the ALJ: (1) should have requested a medical source statement from the Fordham-Tremont Community Mental Health Center (CMHC); (2) failed to develop the record regarding Plaintiff's attendance at political meetings,[2] (3) erred by inferring mild work limitations from Plaintiff's mild symptoms; and (4) failed to consider Plaintiff's assertion that she did not like taking public transportation. (Id.)

     1.    Medical Source Statement from the Fordham-Tremont CMHC

Plaintiff first argues that the ALJ should have issued a subpoena requesting a medical source statement from the Fordham-Tremont CMHC of St. Barnabas Hospital. The court agrees.

The ALJ characterized Azra Mansoor, M.D. of the Fordham-Tremont CMHC as a "treating source," and relied heavily on Dr. Mansoor's treatment notes indicating Plaintiff's psychiatric condition and global assessment functioning (GAF) score. (Rec. at 67-68.) Plaintiff contends that the ALJ erred in only issuing a subpoena as to the treatment notes relating to Plaintiff's condition, but never requested a medical source statement from the treating physician. (Pl. Mem. at 9.)

"First, district courts within this Circuit have routinely recognized that ALJs have an affirmative duty to request medical source statements from a plaintiff's treating sources in order to develop the record, regardless of whether a plaintiff's medical record otherwise appears complete." Battaglia v. Astrue, No. 11-CV-2045 (BMC), 2012 WL 1940851, at *7 (E.D.N.Y.

---

[2] Plaintiff's treatment notes state that she attended "Democratic meetings on Wednesdays." (Rec. at 460.) The court takes this statement to mean that Plaintiff attended political meetings.

May 25, 2012). The court in <u>Battaglia</u> found this conclusion to be grounded in the Code of Federal Regulations. <u>Id.</u> <u>See also</u> 20 C.F.R. §§ 404.1512 and 404.1513(b)(6). "Adjudicators are generally required to request that acceptable medical sources provide these statements with their medical reports." <u>Social Security Ruling No. 96-5p</u>, 1996 WL 374183, at *4 (July 2, 1996). As the ALJ in the present case did not request a medical source statement from the Fordham-Tremont CMHC or Azra Mansoor M.D. whom she deemed to be a "treating source," the ALJ reached a disability determination on an incomplete record.

2.    <u>Record Regarding Attendance at Political Meetings</u>

Plaintiff next argues that the ALJ failed to properly develop the record with regard to Plaintiff's attendance at political meetings. (Pl. Mem. at 10.) Plaintiff contends that the ALJ should have ascertained how often Plaintiff attended such meetings, her level of participation at the meetings, whether she was accompanied by any family member or friends, and how long the meetings lasted. (<u>Id.</u>) The court disagrees.

The fact of Plaintiff's attendance at political meetings was not a finding in itself that had to be adequately developed by the ALJ, but only served as an "example" illustrating that Plaintiff was "able to follow simple instructions and respond appropriately to people and work place changes." (Rec. at 67.) The ALJ also cited an alternative example in support of this finding—that Plaintiff had "support from her sisters and children." (<u>Id.</u>) Thus, the ALJ had no obligation to inquire further.

Plaintiff further argues that while the treatment notes indicated that she attended "Democratic meetings on Wednesdays" (Rec. at 460), this did not mean that Plaintiff attended the meetings every Wednesday, but only that the meetings took place on Wednesdays. (Pl Mem. at 10.) The ALJ's decision was not based on any assumption that Plaintiff attended the meetings every Wednesday, but instead merely repeated what was stated on Plaintiff's form: that Plaintiff

9

attended "Democratic meetings on Wednesdays." (Rec. at 67.) Plaintiff's attendance at political meetings was simply support for the finding that she was "able to follow simple instructions and respond appropriately to people and work place changes." (Id.) The court therefore finds no deficiency in this regard.

### 3. Inference of Mild Work Limitations

Plaintiff contends that the ALJ erred in inferring that Plaintiff only suffered mild work limitations from her mild symptoms. (Pl. Mem. at 17.) The assessment of mild symptoms, as Plaintiff contends, was predicated on circumstances in which Plaintiff was not working, and working would introduce many new stressors such as the need to be subject to the supervision of authority figures. (Id.) This contention can be dealt with effectively by reference to a medical source statement as the court has required in Part III.A.1, supra, which would be able to elucidate with greater clarity the treating source's opinion of Plaintiff's ability to work on a sustained basis.

### 4. Assertion that Plaintiff Does Not Like To Take Public Transportation

Plaintiff argues that the ALJ did not consider Plaintiff's testimony that she did not like to take public transportation as she did not "like being around too many people." (Pl. Mem. at 25; see Rec. at 28.) While the ALJ noted that Plaintiff was able to "use public transportation independently" (Rec. at 66), Plaintiff asserts that this does not mean that she can take public transportation to work on a daily basis. (Pl. Mem. at 25.) It should be noted that Plaintiff did not allege any difficulty with public transportation beyond her dislike for being around too many people, nor did she claim to have a strong aversion to crowded places. The fact that Plaintiff took the train to the ALJ's hearing and to her medical appointments (Rec. at 28), accompanied by the absence of any claim of aversion to crowded public transportation beyond that of the average person, was evidence that a reasonable mind would have accepted as adequate. See

10

Pogozelski, 2004 WL 1146059, at *9. In any event, the availability of a medical source statement from Dr. Mansoor of Fordham-Tremont CMHC as required in Part III.A.1, supra, would provide sufficient evidence to determine the limitations on Plaintiff's daily life.

## B. Development of Record Regarding Physical Impairments

Plaintiff argues that the ALJ did not adequately develop the record regarding her physical impairments, and in particular, the record relating to her hammertoes condition. (Pl. Mem. at 8-10.) The court agrees.

Treatment notes from the St. Barnabas Hospital Podiatry Clinic state that Plaintiff suffered from hammertoes, causing her "sharp intermittent pain" at the time of her May 7, 2009 visit. (Rec. at 266.) She later underwent derotational arthroplasty on May 26, 2009 and complained of left foot "pain 3/10" that was alleviated with Tylenol during her visit to the clinic on June 1, 2009. (Id. at 269.) The ALJ duly noted all of this, as well as treatment notes from a visit on June 8, 2009 which reported that Plaintiff "ambulated with a non-antalgic gait and complained of minimal pain." (Id. at 69.) Plaintiff however argues that this did not mean that she could perform light work (Pl. Mem. at 10), which at its full range "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling No. 83-10, SSR LEXIS 30, at *13 (1983). It should also be noted that Plaintiff was taking Tylenol with codeine at the time of her June 8, 2009 visit. (Rec. at 278.) The ALJ simply concluded that there was "nothing to suggest the claimant's hammertoes would decrease the claimant's residual function capacity to a level below the above stated residual function capacity level." (Id. at 69.) The ALJ, however, had an affirmative duty to develop the record, and should have requested a medical source statement from the clinic or its physicians about Plaintiff's hammertoes condition. See Battaglia, 2012 WL 1940851, at *7. A medical source statement

from Plaintiff's podiatry clinic would constitute necessary and sufficient evidence for the ALJ to make a factual finding of whether Plaintiff could perform light work. The ALJ therefore reached a disability determination on an incomplete record.

### C.   Evaluation of the Treatment Notes from the Fordham-Tremont CMHC

Plaintiff next argues that the ALJ erred by failing to consider the symptom severity scale upon which Plaintiff was rated by physicians at the Fordham-Tremont CMHC. (Pl. Mem. at 12-13, 16-17.) Plaintiff contends that because her symptom severity ratings contradicted the GAF scores given by psychiatrist Dr. Mansoor, the ALJ should have made further inquiry to resolve this inconsistency. (Id. at 17.) The court agrees.

Dr. Mansoor assigned Plaintiff a GAF score between the range of 61 to 70, representing "mild" symptoms, during Plaintiff's psychiatric evaluation at Fordham-Tremont CMHC on June 9, 2010. (Rec. at 470-71.) At a treatment plan review at the same center on July 9, 2010, Plaintiff was assigned the same GAF score, but was rated 7 on the symptom severity scale, on which 1 represented "mild" and 10 represented "severe." (Id. at 472.) At her treatment plan review on October 7, 2010, Plaintiff was assigned a GAF score of 62, and was rated a 5 on the symptom severity scale. (Id. at 474.) At a later treatment plan review on January 11, 2011, Plaintiff was assigned a GAF score of 62 again, but was rated 4 on the symptom severity scale. (Id. at 476.) Plaintiff contends that despite the apparent inconsistencies between the scales, the ALJ did not consider, let alone inquire further into, the Fordham-Tremont CMHC's symptom severity scale. (Pl. Mem. at 12-13, 16-17.)

Plaintiff additionally states that the ratings indicated on the symptom severity scale represented the goals for the Plaintiff to meet for her next review session, and were therefore lower than the actual level of her symptoms at each session. (Id.) A closer review of the

12

treatment notes contradicts Plaintiff's explanation of the symptom severity scale, as separate fields were provided on the forms for the physician to indicate goals and objectives for the next session. (See Rec. at 472-76.) Plaintiff's interpretation of the severity symptom scale would also defeat the argument she alleges above regarding the inconsistencies with the GAF scale.

Interpreting the symptom severity ratings to represent the Plaintiff's current symptom levels, the court finds that the ALJ should have considered this scale alongside Plaintiff's GAF scores and inquired further to resolve any potential inconsistencies. The court also finds that the medical source statement from Dr. Mansoor required in Part III.A.1, supra, would likely constitute sufficient evidence for the ALJ's factual findings by taking into account the different scales used in the treatment notes holistically.

### D. Evaluation of Physicians' Opinions

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Azra Mansoor, M.D., whom the ALJ characterized as Plaintiff's treating physician during the relevant period (Pl. Mem. at 19-20.), and also that of David Mahony, M.D., who conducted Plaintiff's consultative examination on May 26, 2010 (Id. at 17-18).

### 1. Evaluation of Dr. Mansoor's Opinion

Plaintiff contends that the ALJ erred in giving controlling or otherwise significant weight to Dr. Mansoor's treatment notes. The notes were written on June 9, 2010, the first time that Dr. Mansoor examined Plaintiff. (Id. at 19-20.) The court agrees that this report should not have been considered to be from a "treating physician."

A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted). Under the SSA's

13

regulations, "a treating physician's report is generally given more weight than other reports." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). The SSA's "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, "[w]hen other substantial evidence in the record"—such as other medical opinions—"conflicts with the treating physician's opinion, . . . that opinion will not be deemed controlling." Snell, 177 F.3d at 133. And in any case, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner" and are therefore never given controlling weight. Id. (internal quotation marks omitted).

Even when an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the assessment. See 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must assess "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While an ALJ need not mechanically recite each of these factors, the ALJ must "appl[y] the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The court will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" or when the court "encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

14

The absence of a medical source report from Dr. Mansoor in the present case is once again the cause for the error. Without the medical source report, the ALJ instead relied upon the treatment notes taken on June 9, 2010 when Dr. Mansoor had only examined Plaintiff once. (Rec. at 67, 471. Pl. Mem. at 18.) There could not have been "an ongoing treatment and physician-patient relationship" at the time the notes were authored. Sokol, 2008 WL 4899545, at *12. This means that the ALJ was not justified in giving controlling weight to Dr. Mansoor's opinion as reflected in the treatment notes. Even though the ALJ did not explicitly state that she had given Dr. Mansoor's opinion "controlling weight," she found that a report by Dr. Mahony was to be given "little weight" in large part due to its inconsistency with Dr. Mansoor's treatment notes about Plaintiff's ability to concentrate. (Rec. at 67.)

Most of the factors listed in Schaal do not work in favor of giving significantly greater weight to Dr. Mansoor's opinion than to Dr. Mahony's. The length and extent of the treatment relationships between Plaintiff and each physician were similar, at least insofar as the ALJ relied on the treatment notes of Dr. Mansoor's first examination of Plaintiff on June 9, 2010. See Schaal 134 F.3d at 503. The ALJ did not cite any other evidence supporting Dr. Mansoor's finding with regard to Plaintiff's ability to concentrate, and this finding was also inconsistent with Dr. Mahony's opinion that "the claimant could not maintain attention and concentration." (Rec. at 67.) The court therefore finds that the ALJ erred in characterizing the June 9, 2010 treatment notes as representing the opinion of a treating physician, and for according these notes such weight as to subordinate inconsistent findings in Dr. Mahony's report. These errors may however be addressed by a medical source statement from Plaintiff's treating physician, which the court has already required in Part III.A.1, supra.

2.    Evaluation of Dr. Mahony's Opinion

Plaintiff next argues that the ALJ's evaluation of Dr. Mahony's opinion was flawed. (Pl. Mem. at 17-18.) The ALJ considered the report from Plaintiff's consultative examination with Dr. Mahony, and determined that "little weight [could] be given to Dr. Mahony's opinion that the claimant was unable to concentrate." (Rec. at 67.) This was predicated upon several factors listed by the ALJ, namely that: (1) Dr. Mahony's examination took place before Plaintiff received any psychiatric treatment; (2) Dr. Mahony's report was "clearly internally inconsistent"; and (3) "more importantly . . . the claimant's treating doctor did not find the claimant was unable to concentrate and the treatment notes show steady improvement." (Id.)

Plaintiff contends that the ALJ erred in characterizing Dr. Mahony's report as "internally inconsistent." (Pl. Mem. at 17-18.) The ALJ noted that Dr. Mahony found that Plaintiff "could not maintain attention and concentration," yet also found that Plaintiff could "follow and understand simple directions and instructions;" "perform simple tasks independently;" "maintain a regular schedule;" "learn new tasks;" "perform complex tasks;" "make appropriate decisions;" "relate adequately with others;" and "appropriately deal with stress." (Rec. at 67.) Plaintiff contends that these findings did not conflict, because Dr. Mahony did not opine that Plaintiff was unable to concentrate at all, but that Plaintiff was unable to maintain attention and concentration for a longer period of time. (Pl. Mem. at 18.) The court agrees with Plaintiff's interpretation, and finds that Dr. Mahony's report appears to be more internally consistent when interpreted in this way.

Dr. Mahony's report should not be treated as "internally inconsistent," nor does it conflict with an opinion from Plaintiff's treating physician in light of the fact that the treatment notes were written during Plaintiff's first visit to Dr. Mansoor. Because the ALJ erred in her determination of two of the three factors that she relied upon in according Dr. Mahony's opinion

16

"less weight," the court must now remand Plaintiff's case for a proper evaluation of Dr. Mahony's opinion. (See Rec. at 67.) The ALJ is however still entitled to determine the weight of Dr. Mahony's opinion upon the basis that the examination took place before Plaintiff received any psychiatric treatment, which was one of the three concerns listed by the ALJ in the analysis. (Id.) In "weigh[ing] all the evidence," the ALJ is to take into consideration the medical source statement from Plaintiff's treating physician Dr. Mansoor, which the court has required in Part III.A.1, supra. See 20 C.F.R. § 404.1527(c)(2), (d).

### E. Assessment of Residual Function Capacity

Plaintiff argues next that the ALJ did not perform the required function-by-function assessment, but instead expressed Plaintiff's residual function capacity (RFC) only in terms of an exertion level of "light work" as defined in 20 C.F.R. § 416.967(b). (Pl. Mem. at 24.) Plaintiff further contends that this amounts to legal error. The court disagrees.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. § 404.1545 & § 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy and very heavy." Social Security Ruling 96-8p, 1996 WL 374184, at *1. The ALJ did in fact perform the RFC assessment on a function-by-function basis, according to the functions listed in paragraphs (b), (c), and (d) of 20 C. F. R. § 404.1545. (Rec. at 66-69.)

20 C.F.R. § 404.1545(b) lists the functions relating to assessment of physical abilities. The ALJ stated that Plaintiff "testified that she [had] no limitations sitting, standing, pushing, or pulling." (Rec. at 68.) The ALJ also noted that Vinod Thukral, M.D., a consultative examiner,

had reported that Plaintiff "had no limitation for sitting, standing, pulling, pushing, or any other such related activity." (Id.) These findings suffice as a function-by-function RFC assessment.

20 C.F.R. § 404.1545(c) lists the functions relating to assessment of mental abilities, such as "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." The ALJ clearly stated that Plaintiff could "only understand, remember, and carry out simple instructions; and . . . perform simple tasks independently." (Rec. at 66.) 20 C.F.R. § 404.1545(d) further allows for consideration of "[o]ther abilities affected by . . . medically determinable impairment(s)." The ALJ found that Plaintiff "must avoid concentrated exposure to cold, heat, wetness, fumes, odors, gases, and poor ventilation." (Rec. at 66.) The ALJ made a function-by-function assessment of Plaintiff's physical, mental and other abilities, and this assessment therefore does not amount to legal error as Plaintiff contends.

**F.    Evaluation of the Vocational Expert's Testimony**

Plaintiff argues that the ALJ failed to properly evaluate the testimony of vocational expert Andrew Pasternak. (Pl. Mem. at 4-7, 21-23.) The ALJ concluded at the fifth and final step of the analysis that "[b]ased on the testimony of the vocational expert," Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Rec. at 71-72.) See 20 C.F.R. § 404.1520(a)(4); Dixon, 54 F.3d 1019 (2d Cir. 1995). The ALJ noted that on these findings, the vocational expert testified that Plaintiff "would be able to perform the requirements of representative occupations such as hospital products assembler [code 712.687-010], electrical products assembler [code 729.684-054], and electrical accessories assembler [code 729.687-010]." (Rec. at 71, citing U.S. Dept. of Labor, Dictionary of Occupational Titles ("DOT") (4th ed. 1991).) Plaintiff however contends that: (1) the ALJ

18

incorrectly relied on the vocational expert's response to a hypothetical question which did not specify all of Plaintiff's limitations, such as the difficulties she faced in maintaining concentration and responding to figures of authority; (Pl. Mem. at 4-7) and (2) the vocational expert listed jobs that conflicted with the reasoning levels established by the DOT (Pl. Mem. at 21-23).

### 1.   Hypothetical Did Not Include All of Plaintiff's Mental Limitations

The court agrees that the first hypothetical question posed to the vocational expert and relied upon by the ALJ did not include all of Plaintiff's alleged mental limitations such as her inability to maintain concentration and to deal with figures of authority. (See Rec. at 48.) The hypothetical question and the answer in response to it were both mainly focused on Plaintiff's physical and environmental limitations. (Id.) However, this alone does not necessarily constitute error.

"For expert vocational opinion to constitute substantial evidence, the hypothetical question posed to the vocational expert must include all limitations supported by medical evidence in the record." Hendrickson v. Astrue, No. 11-CV-927 (ESH), 2012 WL 7784156 at *9 (N.D.N.Y. Dec. 11, 2012) (emphasis added.) See Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983). The ALJ asked the vocational expert other hypothetical questions in which Plaintiff lacked the ability to pay attention and concentrate, but did not rely upon these answers in arriving at a conclusion at fifth step of the disability analysis. (Rec. at 54-55.) The ALJ's first hypothetical question was not "flawed" as Plaintiff contends (Pl. Mem. at 5), but the ALJ's reliance on the answer to it simply reiterates that the ALJ did not find that Plaintiff's inability to concentrate and problems with authority were "limitations supported by medical evidence in the record." (See Rec. at 67.) The real underlying error here is yet again the failure to develop the

19

record relating to Plaintiff's mental limitations and social functioning, rather than the way in which the hypothetical question was phrased or answered.

### 2. Conflict Between Vocational Expert's Testimony and the DOT

Plaintiff next argues that there was conflict between the testimony of the vocational expert about the jobs that Plaintiff could perform, and the reasoning levels established in the DOT. (Pl. Mem. at 21-23.) While it may be acceptable under certain circumstances for an ALJ to rely on a vocational expert's testimony that conflicts with the DOT, the court finds that the ALJ erred in failing to explain and acknowledge the existence of the conflict.

Under Appendix C of the DOT, the General Educational Development Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. The Reasoning Development Scale ranges from Level 1, which reflects the simplest type of reasoning, to Level 6, the most complex. Johnson v. Astrue, No. 11-CV-3030 (JCW), 2012 WL 5472418, at *18 (E.D. La. Oct. 5, 2012) (citing DOT App. C). In jobs that implicate Level 1 reasoning, a worker will "[a]pply commonsense understanding to carry out simple one-or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT App. C (emphasis added). Level 2 means to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." Id. (emphasis added). The ALJ asked the vocational expert about jobs that would fit the profile of a hypothetical individual who could "follow and understand simple directions and instructions and perform simple tasks independently." (Rec. at 48, emphasis added.) This most closely fits with the description provided for Level 1 reasoning. The occupations of hospital products assembler (code 712.687-010) and electrical accessories

20

assembler (code 729.687-010), listed by both the vocational expert and the ALJ, are however categorized as requiring reasoning development levels of Level 2. See DOT App. C.

"Occupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT." Social Security Ruling No. 00-4p, 2000 SSR LEXIS 8, at *4-5 (Dec. 4, 2008.) In light of the direct conflict present, this was not satisfied in the instant case. In cases of "apparent unresolved conflict, . . . the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled." Id. Where there is an unexplained and direct contradiction of the DOT, the expert's testimony does not constitute substantial evidence to support a finding that jobs are available. Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984); Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003.) Because of the unexplained conflict between the vocational expert's occupational evidence and the DOT's reasoning development scale, the court remands Plaintiff's case for further consideration with respect to this conflict. The court however notes that the existence of a conflict does not preclude the ALJ from giving greater weight to the vocational expert's testimony upon proper consideration, in light of the special knowledge and expertise of vocational experts compared to the DOT which only lists the maximum requirements of occupations as generally performed, rather than the range of requirements of a particular job as it is performed in specific settings. See Social Security Ruling No. 00-4p, 2000 SSR LEXIS 8, at *6 (Dec. 4, 2008.)

### G.     Entitlement to a Closed Period of Benefits

Plaintiff finally contends that the ALJ erred by failing to consider whether Plaintiff was entitled to a closed period of benefits, especially because the ALJ placed significance on the

treatment notes that Plaintiff's psychiatric condition improved over the course of treatment. (Pl. Mem. at 13-15.) The court disagrees.

"A closed period of disability refers to when a claimant is found to be disabled for a finite period of time which started and stopped prior to the date of the administrative decision granting disability status." Deronde v. Astrue, 2013 WL 869489 at *1 (N.D.N.Y. Feb. 11, 2013) (internal quotation marks omitted). The "substantial evidence" standard of review in 42 U.S.C. § 405(g) also applies in such cases. Id. at *11. The ALJ relied on the May 26, 2010, report from consultative examiner Dr. Mahony, and the June 9, 2010 treatment notes from Dr. Mansoor. (Rec. at 67-68.) Dr. Mahony's report established, inter alia, that Plaintiff could "follow and understand simple directions and instructions" and "perform simple tasks independently," while Dr. Mansoor's report established, inter alia, that Plaintiff had a GAF score between 61-70 which put her symptoms in the "mild" range. (Id.) The ALJ's failure to develop the record by obtaining a medical source statement as the court found in Part III.A, supra, is not relevant here as the medical source statement would provide the treating source's medical opinion as to Plaintiff's current mental abilities and level of social functioning. The ALJ's reliance on the notes from May 26, 2010, and June 9, 2010, was not error at least for the purposes of determining Plaintiff's claim of entitlement to a closed period of benefits, and there was "substantial evidence" that a reasonable mind might accept as adequate to support the conclusion that Plaintiff was not so entitled. Moran, 569 F.3d at 112.

42 U.S.C. § 423(d)(1)(A) requires the disability period to last for at least a continuous period of twelve months, and this similarly applies for analysis under a closed period of benefits. Rodriguez v. Barnhart, 249 F. Supp. 2d 210, 212 (E.D.N.Y. Mar. 12, 2003.) Plaintiff alleged a disability onset date of August 1, 2009. (Rec. at 58, 79, 140, 160-67.) The reports and treatment

notes relied upon by the ALJ were dated less than twelve months after the alleged onset date (Rec. at 67), which effectively precludes the possibility of a closed period of benefits before Dr. Mahony's consultative examination in May 26, 2010. Thus, the ALJ had no obligation to inquire further into Plaintiff's entitlement to a closed period of benefits.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED, Plaintiff's cross-motion for judgment on the pleadings is GRANTED, and this case is REMANDED for further proceedings consistent to this opinion.[3]  Specifically, the ALJ should:

(1)    Request a medical source statement from Azra Mansoor, M.D. regarding Plaintiff's psychiatric condition and social functioning;

(2)    Request a medical source statement from a physician at St. Barnabas Hospital Podiatry Clinic regarding Plaintiff's hammertoes condition;

(3)    Properly evaluate the opinion of David Mahony, M.D. in light of all of the medical evidence available; and

(4)    Properly evaluate the testimony of the vocational expert Andrew Pasternak in light of the conflict with the Dictionary of Occupational Titles.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      May _15_, 2014

NICHOLAS G. GARAUFIS
United States District Judge

---

[3]    Pettaway asks the court to remand her case for calculation of benefits. (See Pl. Mem. at 27.)  See generally Balsamo v. Chater, 142 F.3d 75, 82 (2d Cir. 1998) (where the ALJ commits legal error, the court may either "(1) remand[] for reconsideration by the Commissioner upon the existing record or upon a record to be amplified, or (2) remand for calculation of benefits").  The court does not find that there is unequivocal evidence of disability or that further findings would be unhelpful to assure proper disposition of Pettaway's claim; thus, a remand for further proceedings is proper.  See Pokorny v. Astrue, No. 09-CV-1694 (NGG) (JO), 2010 WL 5173593, at *5 (E.D.N.Y. Dec. 14, 2010).